FILED

11/14/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0229

DA 17-0229

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 279

KELLY G. WATSON,

      Plaintiff and Appellant,

    v.

BNSF RAILWAY COMPANY, a Delaware
Corporation; BURLINGTON NORTHERN
AND SANTA FE RAILWAY COMPANY;
BURLINGTON NORTHERN RAILROAD
COMPANY, and DOES A-Z,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and For the County of Cascade, Cause No. ADV 10-0740
                Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Allan M. McGarvey, John F. Lacey, McGarvey, Heberling, Sullivan, &
            Lacey, PC, Kalispell, Montana

      For Appellees:

            Chad M. Knight, Knight Nicastro, LLC, Boulder, Colorado

                    Submitted on Briefs:  October 18, 2017

                               Decided:  November 14, 2017

Filed:

                            _____
                                    Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Plaintiff Kelly G. Watson ("Watson") appeals the January 25, 2017 Order by the Eighth Judicial District Court, Cascade County, granting Defendant Burlington Northern and Sante Fe Railway Company's ("BNSF") motion for summary judgment on Watson's asbestos-related disease claim, brought under the Federal Employers' Liability Act ("FELA"). The dispositive issue in this matter is as follows:

> *Whether the Bankruptcy Court's Order enjoining claims against W.R. Grace and other "Affiliated Entities," including BNSF, tolled the statute of limitations on Watson's claim.*

¶2 We reverse and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Watson was a long-term employee of BNSF in Lincoln County. During his BNSF employment, he was exposed to vermiculite dust. The vermiculite mined in Libby and the dust produced by it contains amphibole asbestos. BNSF transported vermiculite for W.R. Grace & Company and its predecessors from Libby to various locations.

¶4 In July 2000, following widespread news reports on the hazards posed by vermiculite dust from the W.R. Grace mine in Libby, Watson sought a health screening offered by the Libby Community Environmental Health Program. Watson's initial test results for lung disease were negative.

¶5 On April 2, 2001, W.R. Grace filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in U.S. Bankruptcy Court for the District of Delaware. The Bankruptcy Court immediately entered a temporary restraining order ("TRO") against actions being pursued against Nondebtor Affiliates and certain third

parties arising from W.R. Grace's mining operations and exposure to vermiculite dust. The TRO defined "Actions" as "pending actions and actions that have not been filed or are not pending as of the date of entry of this Order . . . ." It also ordered "that the prosecution and/or commencement of all Actions are temporarily restrained pending a resolution of [W.R. Grace]'s pending motions for a preliminary injunction . . . ." On April 12, 2001, the Bankruptcy Court extended the TRO, again defining "Actions" as "pending actions and actions that have not been filed or are not pending as of the date of entry of this Order[,]" and ordered that the "Order Granting Temporary Restraining Order entered on April 2, 2001 temporarily restraining the prosecution and/or commencement of all Actions pending a resolution of plaintiff's pending motions for a preliminary injunction is hereby extended through and including April 24, 2001 . . . ." On April 18, 2001, the Bankruptcy Court entered a preliminary injunction pending a May 3, 2001 hearing.

¶6     On May 3, 2001, the Bankruptcy Court entered a Preliminary Injunction, which ordered "that the prosecution of all Actions are stayed and enjoined pending a final judgment in this adversary proceeding or further order of this Court . . . ." The Injunction again defined "Actions" as "any case filed or pending," but omitted the previously used language, "and actions that have not been filed or are not pending."

¶7     On January 22, 2002, the Bankruptcy Court modified the May 3, 2001 Order. The January 22, 2002 Order "reinstate[d] the bar against the commencement of new Actions against Affiliated Entities." The January 22, 2002 Order also restored the language that had been omitted from the May 3, 2001 Order, so that the definition of "Actions" again

3

included "actions that have not been filed or are not pending . . . ." The Order stayed and enjoined the prosecution of "all Actions as defined above."

¶8 On March 26, 2007, W.R. Grace moved to expand the Bankruptcy Court's Injunction to include actions against BNSF related to W.R. Grace's Libby mining operations. On June 6, 2007, the Bankruptcy Court entered a temporary order staying cases against BNSF while it considered expanding the Injunction.

¶9 Meanwhile, Watson underwent a second health screening in October 2007. On October 22, 2007, a physician advised Watson he had asbestos-related disease associated with his exposure while working for BNSF.

¶10 On April 11, 2008, the Bankruptcy Court entered an order expanding the Injunction to include BNSF as a Nondebtor Affiliate. The Order reads, in pertinent part:

> The matter before the Court is the Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against [BNSF] (the "Expansion Motion"), *which seeks to expand the relief granted by the preliminary injunction (the "Injunction") to specifically include actions against [BNSF]* for exposure of some kind to the Debtors' former vermiculite mining operations in Libby, Montana (the "Montana Actions").
>
> .  .  .
>
> The preliminary injunction at issue in this proceeding was issued on May 3, 2001, barring the prosecution of currently pending actions against various affiliated entities and third parties whose purported liability was solely derivative of W.R. Grace. After May 3, 2001, the preliminary injunction was extended. *On January 22, 2002, the court entered an order modifying the preliminary injunction* to include certain additional affiliates and *to reinstate the bar against the commencement of new actions against affiliates arising from alleged exposure to asbestos whether indirectly or directly cause[d] by W.R. Grace.*
>
> .  .  .

4

AND NOW, this 11th day of April, 2008, for the reasons expressed in the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED, and DECREED that the objections are overruled and the Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against [BNSF], which seeks to expand the relief granted by the preliminary injunction to specifically include actions against BNSF for exposure of some kind to the Debtors' former vermiculite mining operations in Libby, Montana (the "Montana Actions"), is GRANTED.

It is further ORDERED, ADJUDGED, and DECREED that *the Injunction, as defined in the foregoing Memorandum Opinion, is hereby expanded to include BNSF as a Nondebtor Affiliate* and that the Montana Actions and all other similar actions that have been or may be brought against BNSF that arise from alleged exposure to vermiculite ore from the Debtors' Libby mining operations are and shall be stayed until further order of the Court.

(Emphasis added.)

¶11 On August 5, 2010, Watson and two other plaintiffs filed suit against the State of Montana, three wood products companies, Montana Light and Power Co., and Robinson Insulation Co., as well as fictitious defendants, Does A-Z. Watson's complaint contains no allegations against BNSF; neither Watson's employment nor BNSF is referenced in the pleading.

¶12 On February 3, 2014, under the Bankruptcy Court's Order, W.R. Grace's reorganization plan became effective and the automatic stays and injunctions, including actions against BNSF, terminated.

¶13 On November 28, 2014, Watson moved to amend his complaint to remove settled claims against the State, dismiss claims against the wood products defendants and Montana Light and Power Co., and add claims against BNSF. On December 2, 2014, Watson filed his First Amended Complaint and Demand for Jury Trial. He alleged that he was exposed to vermiculite dust during his employment with BNSF, which

5

transported vermiculite for the W. R. Grace & Company and its predecessors from Libby to various locations.

¶14 On January 25, 2017, the District Court granted BNSF's motion for summary judgment. The District Court held the statute of limitations barred Watson's claim because Watson's claim accrued on October 22, 2007, and he should have filed his FELA claims by October 22, 2010. The District Court concluded that "[w]hile the bankruptcy court's injunction stayed pending cases against BNSF, nothing in the injunction prohibited a plaintiff from suing," and "[t]here is nothing in the original bankruptcy court injunction, BNSF expanded injunction, or associated briefing referenced by the parties that precludes filing new cases to preserve the statute of limitations." The District Court also concluded that "there is nothing in the plain language of the bankruptcy court's original injunction or expanded BNSF injunction that enjoins the 'commencement of an action' to trigger § 27-2-406, MCA."[1]

**STANDARDS OF REVIEW**

¶15 We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Anderson v. BNSF Railway*, 2015 MT 240, ¶ 15, 380 Mont. 319, 354 P.3d 1248. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Anderson*, ¶ 15. Once the moving party has met its burden, the non-moving party must present substantial

[1] Section 27-2-406, MCA, tolls a limitations period "[w]hen the commencement of an action is stayed by injunction or other order of the court or judge or statutory prohibition."

6

evidence essential to one or more elements of the case to raise a genuine issue of material fact. *Anderson*, ¶ 15. We review a question of law to determine if the district court's legal conclusions are correct. *Anderson*, ¶ 15 (citing *Harris v. State*, 2013 MT 16, ¶ 11, 368 Mont. 276, 294 P.3d 382).

## DISCUSSION

¶16   *Whether the Bankruptcy Court's Order enjoining claims against W.R. Grace and other "Affiliated Entities," including BNSF, tolled the statute of limitations on Watson's claim.*

¶17   No action may be maintained under the FELA unless commenced within three years from the day the cause of action accrued. 45 U.S.C. § 56. Section 27-2-406, MCA, provides: "When the commencement of an action is stayed by injunction or other order of the court or judge or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action."

¶18   Watson argues the period of limitations for his action against BNSF should be deemed tolled because the commencement of an action against BNSF was enjoined by the Bankruptcy Court's Injunction and § 27-2-406, MCA, applies. Watson asserts the District Court erroneously concluded that the Bankruptcy Court Injunction did not bar the "commencement" of a new action, such as Watson's, because: (a) the Injunction was modified on January 22, 2002, to "reinstate the bar against the commencement of actions"; (b) the Injunction was expanded to bar not only certain "Montana Actions" but "all other similar actions that have been or may be filed" against BNSF; (c) the purpose of expanding the Injunction to include BNSF was to prevent the tender of defense to Debtor W.R. Grace that would be triggered by the filing of a complaint against BNSF;

7

and (d) the Bankruptcy Court and the parties, including BNSF, repeatedly acknowledged the Injunction as a bar against the "commencement" of actions.

¶19 BNSF argues the latest date on which Watson's claim accrued was October 22, 2007, but because Watson did not file until December 2014, the District Court's grant of summary judgment was proper. BNSF maintains the Bankruptcy Court's Injunction merely stayed the prosecution and litigation involving claims against BNSF arising out of W.R. Grace's mining operations in Libby, and did not bar the commencement or filing of new claims against BNSF or toll the limitations period. BNSF contends the District Court appropriately determined that nothing in the plain language of the Injunction barred the commencement of new cases against BNSF while the Injunction was in place. We disagree.

¶20 The District Court's Order failed to acknowledge the Bankruptcy Court's January 22, 2002 Order that modified the May 3, 2001 Injunction for the express purpose of "reinstat[ing] the bar against the commencement of new actions against Affiliated Entities." Furthermore, the Bankruptcy Court's April 11, 2008 Order that expanded the Injunction to include actions against BNSF specifically noted that the original Injunction was modified by the January 22, 2002 Order "to reinstate the bar against the commencement of new actions against affiliates arising from alleged exposure to asbestos whether indirectly or directly cause by W.R. Grace." The April 11, 2008 Order concluded:

> It is further ORDERED, ADJUDGED, and DECREED that *the Injunction, as defined in the foregoing Memorandum Opinion*, is hereby expanded to include BNSF as a Nondebtor Affiliate and that the Montana Actions and

8

all other similar actions that have been or may be brought against BNSF that arise from alleged exposure to vermiculite ore from the Debtors' Libby mining operations are and shall be stayed until further order of the Court.

(Emphasis added.)

¶21 Watson's claim accrued in October 2007. While his claim was still well within the FELA's three-year statute of limitations, the Bankruptcy Court issued its April 22, 2008 Order expanding the Injunction to include BNSF as a Nondebtor Affiliate. This Injunction, as modified by the Bankruptcy Court's January 22, 2002 Order, "bar[red] . . . the commencement of new actions against affiliates." Effective upon the issuance of the Bankruptcy Court's April 22, 2008 Order, therefore, Watson was barred from commencing his asbestos-related disease action against BNSF. The Bankruptcy Court's Injunction was lifted on February 3, 2014, at which time Watson's statute of limitations resumed running. Watson amended his Complaint to include BNSF on November 28, 2014. Approximately six months passed between October 22, 2007, when Watson's claim against BNSF accrued, to April 11, 2008, when the Bankruptcy Court's Injunction was expanded to include BNSF. Approximately ten months passed between February 3, 2014, when the Bankruptcy Court's Injunction was lifted, until November 28, 2014, when Watson amended his Complaint to include BNSF. After excluding the time that Watson was enjoined from commencing an action against BNSF, he amended his Complaint to include a claim against BNSF approximately sixteen months after his claim accrued. This was well within the FELA's three-year statute of limitations.

**CONCLUSION**

¶22 The District Court erred in its conclusion that the Bankruptcy Court's Injunction did not bar the commencement of new actions against BNSF. We reverse the District Court's order granting summary judgment to BNSF and remand to the District Court for further proceedings consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE